# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No.: 19-71019 |
| | ) | |
| James M. Ellenberg, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. No. |
| | ) | |
| _____ | ) | |
| UL LLC, | ) **COMPLAINT OBJECTING TO** | |
| | ) **DISCHARGEABLITY OF A DEBT** | |
| | ) (11 U.S.C. § 523(a)(6)) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| James M. Ellenberg. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff UL LLC ("UL" or "Plaintiff") hereby alleges:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that it is an adversary proceeding and a core proceeding arising under title 11 of the United States Code and has been referred to this Bankruptcy Court by the United States District Court for the Central District of Illinois. UL consents to entry of a final order or judgment by the Bankruptcy Court.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a), because this adversary proceeding arises under title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") and is filed in the district in which Debtor's bankruptcy case is pending.

3.      On July 16, 2019, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Bankruptcy Court.

## THE PARTIES

4.     Plaintiff UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062.

5.     Defendant James M. Ellenberg ("Debtor") is the debtor in the above-entitled Chapter 7 case and resides at 3812 Indian Lands Lane, Springfield, Illinois 62711.

## NATURE OF THIS ACTION

6.     This is a proceeding to have the claim of UL held nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Specifically, Debtor willfully and maliciously injured UL by intentionally infringing and counterfeiting UL's valuable trademarks in violation of the Federal Trademark Act of 1946, also known as the Lanham Act, 15 U.S.C. § 1051.  As described below, prior to the automatic stay, UL was prosecuting a civil action against Debtor and Debtor's company ManSeeManWant LLC ("ManSeeManWant") in the United States District Court for the Central District of Illinois (the "Illinois District Court"), in a case captioned *UL LLC v. Gangsong Grp. Corp., et al.*, Case No.: 2:17-cv-08166 (the "Illinois District Court Action").

7.     As provided in further detail below, the Illinois District Court Action originates from a civil action filed by UL in the Central District of California on November 11, 2017 in which UL named Debtor and ManSeeManWant as two of the several defendants.  Through a court order, Debtor and ManSeeManWant successfully severed and transferred UL's claims against them to the Illinois District Court.

8.     To date, UL continues to prosecute its claim against ManSeeManWant in the Illinois District Court Action.  In conjunction with the initiation of this adversary proceeding, UL will file a motion for stay relief—asking that the Court enter an order allowing UL to continue prosecuting its claim against Debtor in the Illinois District Court Action.

## FACTUAL BACKGROUND

### A.    UL'S VALUABLE RIGHTS

9.      Founded in 1894, UL, including its affiliates and predecessors, is one of the oldest certification companies in the United States. UL has tested, inspected, and certified products and developed safety standards for over a century.

10.     UL's services include promulgating safety standards, certifying that representative samples of products satisfy applicable safety standards, and providing follow-up testing and inspection services to confirm that manufacturers are in compliance.

11.     UL is a global independent safety science company offering certification, validation, testing, inspection, advising, training, and auditing services for a variety of industries around the globe.

12.     UL owns the well-known UL-in-a-circle certification mark and variations thereof (the "UL Certification Marks"). UL also owns the UL Service Mark (the "UL Service Mark" and, collectively, the "UL Marks").

13.     UL has been providing testing reports and certifying products that conform to UL's Standards for Safety since at least  1906.  Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Marks in interstate commerce.

14.     UL has been testing products and authorizing use of the famous UL Certification Marks on products that conform to UL's Standards for Safety in interstate commerce in the United States since at least 1937.  UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

15.     UL serves all members of the general public, including, but not limited to, consumers, manufacturers, suppliers, retailers, vendors, trade groups, industry associations, regulatory bodies, and governmental entities.

16.     UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

17.     Over the past century, UL has used its UL Marks to promote its certification programs through a wide variety of marketing channels and outlets on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and interactive websites and webpages such as <ul.com>, <safetysmart.com> and the UL Safety at Home page located on <facebook.com>.

18.     As a result of UL's extensive use of the UL Marks to promote its certification programs, including standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research, the UL Marks have attained a national and global reputation for technical expertise and integrity, and have become a symbol of trust and objectivity.

19.     The UL Marks are well-known and recognized by the general public as well as members of local, state and federal government regulatory bodies and industry trade associations, as marks indicating testing, inspection, validation, certification, training, advising, and auditing services originating with UL.

20.     The UL Service Mark and the UL Certification Marks are renowned among the general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Debtor began engaging in the conduct alleged in this Complaint.

21.     UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register.  UL owns the following federally registered marks.   Copies of some of these registrations, or their corresponding USPTO website pages, are attached as **Exhibits A- D**.

| MARK | REG. NO. | EXHIBIT | TYPE |
|---|---|---|---|
| | 0782589 | A | Certification Mark |
| | 2391140 | B | Certification Mark |
| UL | 4201014 | C | Service Mark |
| | 4,283,962 | D | Certification Mark |

22.     The federal trademark registrations referenced above are valid and subsisting, and provide conclusive evidence of the right of UL to use the UL Marks in commerce.

23.     UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (**Exhibits A-B, D**).  The UL Certification Mark is the single most accepted certification mark in the United States, appearing on 22 billion products annually.  UL has adopted an enhanced version of its Certification Marks, shown in Exhibit D, to

deliver greater transparency and inspire buyer confidence at point-of-sale. UL also introduced holographic labels to prevent or deter duplication of its Certification Marks by counterfeiters. Holographic labels provide greater security because it is very difficult for counterfeiters to imitate the unique features.

24.      UL offers educational, business advisory, product safety testing, and public safety services (the "UL Services") under its UL Service Mark.

25.      Use and registration of the UL Certification Marks and the UL Service Mark clearly establish that UL has senior trademark rights in its family of UL Certification Marks and UL Service Mark, and consequently there is no question of priority of rights, as such priority clearly belongs to UL.

26.      UL's United States Trademark Registration Nos. 2391140 and 782589 referenced above are incontestable under 15 U.S.C. § 1115(b). As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks throughout the United States in connection with the UL Certification Services.

27.      UL has extensively used the UL Service Mark and has advertised, promoted, and offered the UL Services under the UL Service Mark in interstate commerce through various channels of trade. As a result, the customers and potential customers of UL, and the public in general have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services. UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

*[Remainder of Page Intentionally Left Blank]*

**B.      UL'S PRODUCT CERTIFICATION PROCESS**

28.      Manufacturers may seek UL certification and listing in the UL certification directory by submitting representative product samples for evaluation and/or testing.   UL will examine these representative samples to determine whether they comply with the applicable safety, performance or other standards.

29.      If the representative samples comply with the applicable standard, and the manufacturer has adequate procedures in place to ensure that its production runs will be consistent with those representative samples, UL may authorize the manufacturer to affix the UL Certification Mark to that product and to advertise the product as being UL Certified.

30.      When a manufacturer's product has been found eligible for UL certification, the product is subject to UL's follow-up services whereby representatives of UL will make random, unannounced visits to the factory a few times per year to audit the means the manufacturer uses to determine the product's continued compliance with UL's requirements ("Follow-Up Services").    The manufacturer's use of the UL Certification Mark is the manufacturer's representation that the product is in compliance with UL's requirements and subject to UL's Follow-Up Services.

**C.      DEBTOR'S WRONGFUL CONDUCT**

31.      In the fall of 2015, self-balancing two-wheeled scooters called "hoverboards" became a popular consumer item.  In order to meet holiday demand, unscrupulous manufacturers rushed these products to production without sufficient attention to key safety details.

32.      By mid to late 2015, there were numerous reports about hoverboards self-combusting and catching on fire.  Hoverboards that were exploding and setting on fire became a

significant safety concern because users were being injured and homes and cars were being damaged as a result of such unsafe hoverboards.

33.     On December 15, 2015, the United States Consumer Product Safety Commission ("CPSC") opened an investigation into hoverboard safety.  The CPSC was prompted to open its investigation because it had received at least 29 reports of personal injuries from hoverboards that required emergency room treatment and 10 other reports of hoverboards catching fire.

34.     On information and belief, because these safety issues harmed sales, many unscrupulous manufacturers responded to this negative press by falsely claiming that their hoverboards were "UL Certified."  In 2015, no safety standard for self-balancing scooters existed, and any claim that a hoverboard was "UL Certified" was patently false.

35.     In February of 2016, UL released a safety standard, UL 2272 "*Outline of Investigation for Electrical Systems for Self-Balancing Scooters,*" for self-balancing scooters, and UL has been working with several manufacturers to certify products which meet that standard.  UL did not issue its first certification of hoverboards under this standard until on or about May 2016. Unfortunately, there were a number of counterfeiters who insisted on claiming that their product was certified by UL when they were not UL customers and had never asked UL to inspect or certify their product.

36.     In this case, Shenzhen Kebe Technology Co. Ltd. ("Kebe") was the source of the hoverboards bearing the counterfeit UL mark and also sold hoverboards on various websites, claiming UL certification, when they were not certified.

37.     Notwithstanding UL's exclusive rights in and to the UL Certification Marks and the UL Service Mark, and well after UL's adoption and registration of the UL Certification Marks and the UL Service Mark, Gangsong Group Corporation ("Gangsong"), Flying Medical USA LLC

("Flying Medical"), Logistic Public Warehouse (collectively "Santa Fe Springs Defendants") and Thomas Soon Chiah adopted and began using a mark that is identical to or substantially indistinguishable from the UL Certification Marks (the "Counterfeit Mark") to suggest falsely that their goods have been certified by UL. During this time, Mr. Chiah was the Chief Executive Officer of Gangsong, Vice President of Sales and Business Development of Flying Medical, and Sales Manager of Logistic Public Warehouse.

38.    Specifically, the Santa Fe Spring Defendants and Mr. Chiah used a Counterfeit Mark on hoverboards they sold. The Santa Fe Springs Defendants and Mr. Chiah offered these products for sale at a warehouse located at 10001 Pioneer Boulevard, Santa Fe Springs, California 90670-3221. Representative photos of these products are below:









Certain of the hoverboards photographed above bear labels with the Counterfeit Mark, representing to customers that such products are certified by UL when they are not certified.

39.    On September 18, 2017, a UL representative accompanied a task force from the Los Angeles Sherriff's Department ("LASD") as it executed a search warrant at the warehouse located at 10001 Pioneer Boulevard, Santa Fe Springs, California, 90670-3221. A UL representative identified approximately 2,500 hoverboards, some of which were affixed with labels bearing the Counterfeit Mark.  The retail value of this quantity of counterfeit goods, if genuine, would be over $580,000. In addition, the UL representative identified 2,325 counterfeit UL holographic labels bearing the Counterfeit Mark at the Santa Fe warehouse. An image of these labels is below:



40.     Debtor is the owner of ManSeeManWant.

41.     ManSeeManWant is an Illinois limited liability company, filing number 05321123, doing business at 4055 West Jefferson Street, Springfield, Illinois 62707.

42.     On information and belief, Debtor, ManSeeManWant and other yet unknown individuals maintained an interactive website at <https://manseemanwant.com/>.  The website offered for sale hoverboards which were marketed falsely as UL Certified to consumers in the United States.  (**Exhibit E.**)  Debtor caused ManSeeManWant to falsely advertise and promote these hoverboard products as compliant with UL2272, going so far as to include "UL2272" in the title of the hoverboard ManSeeManWant offered for sale.

43.     Debtor obtained these hoverboards from the Santa Fe Springs Defendants and Mr. Chiah.  (**Exhibit F.**)

44.     ManSeeManWant also advertised Universal Hoverboard Replacement Battery Packs as being UL Certified when they were not, in fact, UL Certified.

45.     Debtor used a Counterfeit Mark that is identical to and confusingly similar to the UL Certification Marks in appearance, sound, meaning, and commercial impression.

46.    Debtor's use of the Counterfeit Mark traded off the goodwill of the UL Service Mark and was without permission or license from UL.

47.    Debtor advertised and sold the hoverboards in commerce using the Counterfeit Mark to falsely suggest the products were certified by UL.

48.    Debtor's products associated with the Counterfeit Mark were never certified by UL to any safety requirements, and as such, may have placed the health and safety of the user at risk. Indeed, consumers purchase these types of high voltage products relying on the representation that the products are certified by UL, particularly given the numerous reports of uncertified hoverboards catching fire.

49.    Debtor's infringement had at all times been knowing and willful.  Debtor was on constructive notice of the UL Certification Marks and the UL Service Mark by virtue of their federal registration.  Debtor had no permission to use UL's Marks in the marketing of hoverboard products on ManSeeManWant's website.

50.    Debtor is aware that he never asked UL for permission to use any of the UL marks. Debtor is aware that UL has never authorized Debtor to make any use of the UL Marks.  Debtor nevertheless personally and repeatedly used the Counterfeit Mark to advertise and promote his hoverboard products.

51.    Debtor knew or had reason to know of the UL Certification Marks and the UL Service Mark at the time Debtor commenced use of the Counterfeit Mark.  Upon information and belief, Debtor intentionally adopted and used the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and UL Service Mark.

**D.    THE DISTRICT COURT ACTIONS**

52.    On November 11, 2017, UL filed a complaint (the "Complaint") against the Santa Fe Spring Defendants; Mr. Chiah; Shenzhen Kebe Technology Co.; Shenzhen Leidisi Electronics Technology Co., Ltd.; TRC International Corp.; Sum Fortune International Group; Defant USA, LLC; Sun Defang; ManSeeManWant; and Debtor in the United States District Court for the Central District of California (the "California District Court") (**Exhibit G**.)  The Complaint asserts counts for: (1) Federal Trademark Infringement under 15 U.S.C. § 1114; (2) Counterfeiting of a Registered Trademark under 15 U.S.C. § 1114; (3) Federal Unfair Competition and False Designation of Origin and False and Misleading Representations under 15 U.S.C. § 1125(a); (4) Unfair Competition under California Business and Professions Code §§ 17200 *et seq.*; and (5) False Advertising under California Business and Professions Code §§ 17500 *et seq.*

53.    On December 8, 2017, upon the request of UL, the Clerk for the California District Court entered default on Debtor and ManSeeManWant.  (**Exhibit H**.)

54.    On February 6, 2019, the California District Court denied UL's application for default judgment against Debtor and ManSeeManWant and also set aside the entry of default against the two parties.  (**Exhibit I**.)

55.    On March 15, 2019, the Court entered an order approving a motion jointly filed by Debtor and ManSeeManWant.  (**Exhibit J**.)  The order stated that the claims against Debtor and ManSeeManWant were to be severed and transferred to the Illinois District Court.  (*Id.*)

56.    On April 12, 2019, the Clerk for the California District Court submitted a transmittal sheet providing that the claims against Debtor and ManSeeManWant were severed and transferred to the Illinois District Court.  (**Exhibit K**.)

57.    On May 16, 2019, Debtor and ManSeeManWant answered the Complaint in the Illinois District Court.  (**Exhibit L**.)

58.    On July 16, 2019, Debtor filed for a petition for bankruptcy relief under Chapter 7. *See* (**Exhibit M**.)  Counsel for Debtor notified the Illinois District Court.  (*Id.*)

## CLAIM FOR RELIEF

59.    UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

60.    Bankruptcy Code § 523(a)(6) provides in pertinent part as follows:

(a)    A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to the entity or to the property of another entity . . . .

11 U.S.C. § 523(a)(6).

61.    UL has suffered irreparable harm as a result of Debtor's wrongful conduct.

62.    Debtor intended to and did cause UL injury from his conduct.

63.    Debtor acted willfully in his wrongful conduct and his actions were malicious.

64.    Debtor's debt to UL is nondischargeable as it is a debt for willful and malicious injury caused by Debtor within the meaning of Bankruptcy Code § 523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, UL respectfully prays the Court:

A.     Enter a judgment in favor of UL and against Debtor holding UL's claim nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

B.     Order Debtor to supply UL with a complete list of the individual or entities to which he caused to be distributed and/or sold products using the Counterfeit Mark;

C.     Order Debtor to pay to UL both the costs of this action and reasonable attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a); and

D.     Award such other and further relief as the Court deems just and proper.


DATED: October 18, 2019                    *UL LLC*


                                           By: */s/ Nancy A. Peterman*
                                           Nancy A. Peterman (IL ARDC #6208120)
                                           Kevin D. Finger (ARDC # 6216060)
                                           Danny A. Duerdoth (ARDC # 6323842)
                                           Greenberg Traurig, LLP
                                           77 West Wacker Dr., Suite 3100
                                           Chicago, Illinois 60601
                                           Telephone: (312) 456-8400
                                           Emails: *Fingerk@gtlaw.com*
                                                    *Duerdothd@gtlaw.com*

                                           – and –

                                           Matthew R. Gershman
                                           Greenberg Traurig, LLP
                                           1840 Century Park East, Suite 1900
                                           Los Angeles, CA 90067
                                           Telephone:     (310) 586-7700
                                           Emails: *Gershmanm@gtlaw.com*


                                           *Attorneys for Creditor UL LLC*